[Civ. No. 8013.   Third Dist.   July 27, 1951.]

LEE GRISSOM, Petitioner, v. SUPERIOR COURT OF
TEHAMA COUNTY, Respondent.

Harrison W. Call for Petitioner.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

VAN DYKE, J.—Petitioner seeks a writ from this court prohibiting the Superior Court of Tehama County from proceeding further upon an information charging him with man-

slaughter. An alternative writ was issued and the matter has been briefed, argued and submitted for decision.

The petition alleges that on July 31, 1950, the District Attorney of Tehama County filed a criminal complaint in the Justice's Court of Red Bluff, accusing petitioner of the crime of manslaughter in that petitioner did on or about July 30th wilfully, unlawfully, feloniously and without malice kill one Warren Shermmer; that, on August 16th following, a preliminary examination was conducted by the justice's court; that said court then ordered petitioner to be held to answer for the offense charged; that no evidence was introduced at said preliminary hearing tending to prove, or in any way proving, that the crime of manslaughter had been committed by petitioner or at all; that over petitioner's objection the committing magistrate erroneously admitted into evidence an extrajudicial statement of petitioner. Petitioner concludes that the order of commitment was made without reasonable or probable cause and that he is therefore entitled to the writ prayed for. Before he filed his petition here, petitioner's motion presented to the superior court to vacate and set aside the information upon the foregoing grounds was denied.

The record of the preliminary examination shows the following: On the night of July 30, 1950, the deceased, Warren Shermmer, entered a bar in Tehama County, called "The Mint." The petitioner and his companion, Claude Lee, had arrived at the bar some 20 minutes earlier. There were six or seven people in the barroom, including petitioner and the deceased. When Shermmer entered the barroom he took a position at the bar near the entrance. Petitioner and Claude Lee were at the other end of the bar some 30 feet away. The bartender was just across the bar from Shermmer. Claude Lee testified that when Shermmer came in petitioner saw him and said, "Watch me get a drink." Lee replied, "Don't cause any trouble," and petitioner said he was going to get a drink out of it. The bartender observed that Shermmer appeared to be intoxicated to such an extent that when requested he refused to serve liquor to him, whereupon Shermmer asked the bartender to "give the rest of them a drink." Petitioner came up to where Shermmer was standing and took a position at the bar just to Shermmer's right. Shermmer greeted him, saying, "Hello, Lee, come on I will buy you a drink," to which petitioner replied, "I know damn well and good you will; I will take it" and he slapped the bar as he spoke. The bartender turned to get a drink for peti-

tioner and as he stood with his back to the two men he heard a sound which he described as that of a blow being struck, though he did not see the blow. He turned and observed that Shermmer was down on the floor on his back; petitioner was trying to get him up, saying at the same time, "Get up, God damn you, and I will kick your ribs out." The bartender succeeded in getting petitioner down to the other end of the bar. He was acting belligerently and appealed to the owner of the bar to fire the bartender. He then told the bartender to come outside "and he would give me [the bartender] some of it." As Shermmer and petitioner stood at the bar no other person present except the bartender was closer to Shermmer than four or five feet, the nearest of them sitting on stools. Shermmer died without regaining consciousness and the examining physician testified that the cause of death had been a ruptured blood vessel at the base of the brain which was of traumatic origin.

From what has been said we cannot say that the committing magistrate could not have inferred that petitioner had struck the deceased, that the blow had felled him, and that death followed as the end result. That was enough to meet the requirements of the statutes and the cases which have interpreted them.

Section 872 of the Penal Code provides that the defendant must be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof." Section 1487(7) further provides that a party is entitled to discharge upon habeas corpus proceedings where he has "been committed on a criminal charge without reasonable or probable cause."

The term "sufficient cause," as used in section 872, means no more than "reasonable or probable cause" as used in section 1487(7). (*People* v. *Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344]; *People* v. *Putnam*, 20 Cal.2d 885 [129 P.2d 367]; *Cleugh* v. *Strakosch*, 109 F.2d 330; *In re Martinez*, 36 Cal. App.2d 687 [98 P.2d 528].) " 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. 'Reasonable and probable cause' may exist although there may be some room for doubt." (*People* v. *Nagle*, *supra*.) It is clear that the committing magistrate was justified in holding petitioner for trial and that no reason exists for prohibiting the respondent court from proceeding

under the information thereafter filed charging the crime of manslaughter.

It is not necessary to discuss the petitioner's contention concerning the alleged erroneous admission of the extrajudicial statement for the statement was not necessary to make out probable cause.

The writ is discharged.

Adams, P. J., and Peek, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 24, 1951.